1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL MCNEIL,                        Case No.  1:19-cv-01257-NODJ-HBK

12              Plaintiff,                  ORDER GRANTING IN PART PLAINTIFF'S
                                            REQUEST FOR JUDICIAL NOTICE
13         v.
                                            (Doc. No. 63)
14
     KIRAN TOOR, PAL VIRK, TIN-AUNG         FINDINGS AND RECOMMENDATIONS TO
15   SHWE, HARMINDER LONGIA,                GRANT DEFENDANTS' MOTION FOR
                                            SUMMARY JUDGMENT[1]
16              Defendants.
                                            (Doc. No.  53)
17
                                            FOURTEEN-DAY OBJECTION PERIOD[2]
18

19

20

21         Pending before the Court is Defendants' motion for summary judgment.  (Doc. No. 53,

22   "Motion").  Plaintiff filed an opposition and request for judicial notice in response to the Motion.

23   (Doc. Nos. 63-64).  Defendants filed a reply and a notice of errata pertaining to their reply.  (Doc.

24

25   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
     302(c)(17) (E.D. Ca. 2022).
26   [2] On December 4, 2023, this case was assigned to the No District Judge ("NODJ") docket due to the
     elevation of District Judge Ana I. de Alba to the Ninth Circuit Court of Appeals.  (Doc. No. 83).  This case
27   will remain pending until a new district judge is appointed or until another district judge considers these
     Findings and Recommendation.  Despite this anticipated delay, the objection period remains fourteen (14)
28   days, absent leave for an extension of time being granted.

Nos. 72-73).  For the reasons discussed below, the undersigned grants in part Plaintiff's request for judicial notice and recommends that the district court grant Defendants' motion for summary judgment because there is no genuine dispute of material facts as to whether Defendants acted with deliberate indifference to Plaintiff's serious medical condition.

## I. BACKGROUND

### A. Allegations in Complaint

Plaintiff Michael McNeil, a state prisoner, is proceeding pro se on his initial complaint filed pursuant to 42 U.S.C. §1983.  (Doc. No. 1).  The former magistrate judge screened the Complaint and found it plausibly alleged an Eighth Amendment medical deliberate indifference claim against the following Defendants, who were health care providers at Valley State Prison: (1) Kiran Toor, (2) Paul Virk, (3) Tin-Aung Shwe and (4) Harminder Longia.  (Doc. No. 10).  In summary, the Complaint alleges that Defendants were deliberately indifferent to Plaintiff's serious medical needs when they failed to treat his chronic pain.  (*Id*. at 8).[3]  Plaintiff claims Defendants "acted in concert" when they removed his "access to accommodations necessary for his medical conditions."  (*Id*. at 9-10).  As clarification, Plaintiff points to the decisions made by the Pain Management Committee on January 10, 2019, and by the Interdisciplinary Treatment Team Committee on March 13, 2019, finding that Plaintiff no longer required long-term use of opioids.  (*Id*. at 11).  Plaintiff submits the Defendants misinterpreted guidelines by the Centers for Disease Control and Defendant Toor submitted false medical records, and/or made misrepresentations about Plaintiff's medical condition to the Committees, which the Committees relied upon to deny Plaintiff continued use of morphine to treat his chronic pain.  (*Id*. at 11, 15).  Plaintiff argues the Defendants' decision to discontinue his long-term use of morphine to treat his chronic pain amounted to deliberate indifference. (*See generally Id*.).  As relief, Plaintiff seeks injunctive relief, compensatory and punitive damages.  (*Id*. at 18).

////

////

////

---

[3] The Court cites to the page numbers that appear on the header on the CM/ECF as opposed to the paper documents.

1

### B. Defendants' Motion for Summary Judgment[4]

2    Defendants argue they are entitled to summary judgment because no Defendant was

3  deliberately indifferent to Plaintiff's serious medical need because none of the Defendants

4  observed Plaintiff in severe pain; and Plaintiff was regularly treated for any complaints of pain,

5  and continuously monitored and treated by numerous medical personnel.  (Doc. No. 53-1 at 2).

6  Defendants submit the uncontroverted evidence demonstrates that:  Plaintiff was weaned off

7  opioids consistent with CDCR's 2019-2020's concerted effort to remove opiate treatment of

8  chronic pain for non-cancer patients; Plaintiff was provided with alternative pain treatments; and

9  Plaintiff was offered and received various alternative pain relief medications and therapies to

10  abate his chronic pain.  (*Id*. at 8-9).  Defendants further argue Plaintiff cannot show that their

11  courses of treatment were medically unacceptable.  (*Id*. at 9-10).  Defendants explain that they

12  followed CCHS's guidelines for prescribing opioids, which reflected recommendations from the

13  United States Department of Health and Human Services and CDC.  (*Id*. at 6-7).  Defendants

14  argue that while Plaintiff preferred opioids, namely morphine, as his choice of pain medication,

15  the Eighth Amendment does not guarantee him with his own choice of medication.  (*Id*. at 8).

16    Alternatively, Defendants assert they are entitled to qualified immunity.  (*Id*. at 2).

17  Defendants argue Plaintiff cannot meet his burden to show that Defendants violated a clearly

18  established constitutional right because there is no authority that put Defendants on notice that the

19  course of treatment Plaintiff received was medically unacceptable for moderate chronic back and

20  neck pain.  (*Id*. at 11-12).  Indeed, Defendants submit that they were following directives from the

21  Receiver's Office that recommended removal of over-prescribed opioid medication within

22  CDCR.  (*Id*.).  Thus, no other physician in Defendants' position would have reason to believe that

23  a decision to taper Plaintiff off opioids and substitute alternative pain medication was

24  unreasonable under the circumstances.  (*Id*. at 13). Defendants' motion for summary judgment is

25  supported by certified copies of Plaintiff's central file to include his bed assignment and medical

26  records (Doc. No. 53-2 at 9-166); California Correctional Health Care Services ("CCHS") Guide:

27

28
---
[4] Notably none of the Defendants submitted declarations in support of the MSJ.  However, Plaintiff did submit
Defendants Toors and Virks' responses to Plaintiff's Interrogatories.  (Doc. No. 64-4 at 16-24 and 65-74).

1  Pain Management Part 3-Opioid Therapy (*Id*. at 167-199); and Center for Disease Control and

2  Prevention (CDC) Guideline for Prescribing Opioids for Chronic Pain, dated March 18, 2016.

3  (*Id*. at 200-252).

4  **C. Plaintiff's Opposition**

5  In opposition, Plaintiff argues Defendants' Motion should be denied because there is a

6  dispute of material facts. (*See generally* Doc. No. 64). Plaintiff alleges medical records were

7  missing from his file, which improperly impacted the Committee's decision to discontinue his

8  opioid prescription. (*Id*. at 3-4). More particularly, Plaintiff claims Defendant Toor purposefully

9  removed medical records from his file before the Pain Management Committee reviewed it,

10  which led to the recommendation that Plaintiff should be weaned off opioids. (*Id*. at 8-9).

11  Plaintiff takes issue with Defendants' characterization of medical appointments he had with

12  Defendant Toor and other earlier medical professionals, as well as their opinions regarding his

13  level of pain, mobility, and discomfort. (*Id*. at 9 ¶ 13, 10-12). Finally, Plaintiff disputes that a

14  surveillance video from 2010, which Defendants claim depicts Plaintiff carrying a heavy

15  punching bag and lifting it and was relied upon by the Committee, is footage of him and should

16  not have been used as a reason to discontinue his opioid prescription. (*Id*. at 2 ¶1, 41 ¶39).

17  Plaintiff's opposition is supported by his own declaration (Doc. No. 64 at 37-58), excerpts

18  of his medical documents (*Id*. at 60; 64-1; 64-2; 64-3 at 1-42; 64-4 at 61-63, 111-131; 64-5 at 1-

19  17, 53-65), Defendant Toor's responses to request for admissions (Doc. Nos. 64-3 at 48-50, 64-4

20  at 1-11), the declaration of inmate David Mahler (Doc. No. 64-4 at 13), the declaration of inmate

21  Cesar Herrera (*Id*. at 14), Defendant Toor's response to Plaintiff's first set of interrogatories (*Id*.

22  at 16-59), Defendant Virk's response to plaintiff's first request for interrogatories (*Id*. at 65-109),

23  correspondence from Plaintiff to defense counsel (Doc. No. 64-5 at 19), CCHS Guide: Pain

24  Management Part 3-Opioid Therapy (Doc. No. 64-4 at 27-58. 77-108), and CCHS Guide: Pain

25  Management Part 2-Therapy-Non-Opiod (Doc. Nos. 64-5 at 21-49); Pain Management

26  Committee Progress Note (Doc. No. 64-5 at 50-51); and CCHS Pain Management in Corrections

27  (*Id*. at 67-85).

28  ////

4

### D. Defendants' Reply

In reply, Defendants reiterate Plaintiff's claim is based solely on his difference of opinion with the Defendants, which is insufficient to establish a medical deliberate indifference claim. (Doc. No. 72 at 2). Defendants point out the medical evidence demonstrates that Plaintiff's complaints of pain were consistently addressed. (*Id*.). Defendants offered Plaintiff alternative pain relief treatments. (*Id*. at 6-7). Defendants submit the course of treatment offered to Plaintiff was medically appropriate and the treatment was not chosen with conscious disregard for an excessive risk to Plaintiff's health. (*Id*. at 8-9).

## II. APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material where it is (1) relevant to an element of a claim or a defense under the substantive law and (2) would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1987).

The party moving for summary judgment bears the initial burden of proving the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts, by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial. *See* Fed. R. Civ. P. 56(c)(1); *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp*., 477 U.S. at 325; see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").) Indeed, summary judgment

5

1  should be entered, after adequate time for discovery and upon motion, against a party who fails to

2  make a showing sufficient to establish the existence of an element essential to that party's case,

3  and on which that party will bear the burden of proof at trial. *Celotex Corp*., 477 U.S. at 322. "[A]

4  complete failure of proof concerning an essential element of the nonmoving party's case

5  necessarily renders all other facts immaterial." *Id*. at 323. A mere "scintilla of evidence" in

6  support of the nonmoving party's position is insufficient. *In re Oracle Corp. Sec. Litig.*, 627 F.3d

7  at 387. Rather, the evidence must allow a reasonable juror, drawing all inferences in favor of the

8  nonmoving party, to return a verdict in that party's favor. *Id.*

9        The court must view the evidence in the light most favorable to the nonmoving party.

10  *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). It may not weigh evidence or make credibility

11  determinations. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). Conclusory or speculative

12  testimony in affidavits and supporting papers is insufficient to raise a genuine issue of fact and

13  defeat summary judgment. *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007);

14  *see* Fed. R. Civ. P. 56(c)(2). Furthermore, the Ninth Circuit has "held consistently that courts

15  should construe liberally motion papers and pleadings filed by pro se inmates and should avoid

16  applying summary judgment rules strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018)

17  (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved

18  from strict compliance, they still must "identify or submit some competent evidence" to support

19  their claims. *Soto*, 882 F.3d at 872. Plaintiff's verified complaint may serve as an affidavit in

20  opposition to summary judgment if based on personal knowledge and specific facts admissible in

21  evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc). However, a

22  complaint's conclusory allegations unsupported by specific facts, will not be sufficient to avoid

23  summary judgment. *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th

24  Cir. 2001). And, where a plaintiff fails to properly challenge the facts asserted by the defendant,

25  the plaintiff may be deemed to have admitted the validity of those facts. *See* Fed. R. Civ. P.

26  56(e)(2).

27        The undersigned has carefully reviewed and considered all arguments, points and

28  authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

6

objections, and other papers filed by the parties.  The omission to an argument, document, paper, or objection is not to be construed that the undersigned did not consider the argument, document, paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate for purposes of issuing these Findings and Recommendations.

**B. Section 1983 and Eighth Amendment Medical Deliberate Indifference**

To state a claim under § 1983, a plaintiff must show that a defendant acting under color of state law caused an alleged deprivation of a right secured by federal law.  *See* 42 U.S.C. § 1983; *Park v. Thompson*, 851 F.3d 910, 921 (9th Cir. 2017).  The plaintiff can satisfy the causation requirement by showing either (1) the defendant's "personal involvement" in the alleged deprivation or (2) a "sufficient causal connection" between the defendant's conduct as a supervisor and the alleged deprivation.  *King v. Cty. of Los Angeles*, 885 F.3d 548, 559 (9th Cir. 2018).

The Constitution indisputably requires prison officials to provide inmates with reasonably adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  To hold an official liable for violating this duty under the Eighth Amendment, the inmate must satisfy two prongs, an objective prong and subjective prong.  First, the inmate must suffer from a serious medical need (the objective prong); and second the official must be deliberately indifferent to the inmate's serious medical need (the subjective prong).  *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012).  A medical need is "serious" if the failure to treat "could result in further significant injury or the unnecessary and wanton infliction of pain."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).  A serious medical need is evidenced by "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."  *McGuckin*, 974 F.2d at 1059-60.

The "second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (internal citations omitted).  This standard requires that the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk."  *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002).  This "subjective approach" focuses only "on what a defendant's mental attitude actually was."  *Farmer*, 511 U.S. at 839.

Deliberate indifference is a higher standard than medical negligence or malpractice, and a difference of opinion between medical professionals—or between a physician and the prisoner—generally does not amount to deliberate indifference.  *See generally Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (A mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.").  To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson*, 90 F.3d at 332.

Neither will an "inadvertent failure to provide medical care" sustain a claim.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Misdiagnosis alone is not a basis for a claim, *see Wilhelm*, 680 F.3d at 1123, and a "mere delay" in treatment, "without more, is insufficient to state a claim of deliberate medical indifference," *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  Instead, a prisoner must show that a delay "would cause significant harm and that defendants should have known this to be the case."  *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002).

////

////

8

### III.  ANALYSIS

#### A.  Material Facts

Following a thorough review of the evidence submitted, the undersigned finds the following relevant material facts undisputed unless otherwise indicated:

- Plaintiff is a state prisoner and has been in CDCR's custody since November 5, 1999.  Plaintiff was housed at Valley State from December 12, 2012 through June 21 2021, the relevant period in the Complaint.  (Doc. No. 72-1 ¶1).

- Defendants are health care providers at Valley State Prison and worked in the following capacities which are material to the matters at issue: Defendants Toor, Shwe, and Virk were physicians and surgeons; and Defendant Longia was the Chief Physician and Surgeon.  (Doc. No. 72-2 ¶2).  Dr. Toor was Plaintiff's Primary Care Physician who presented Plaintiff's case to the Interdisciplinary Treatment Team Committee. (Doc. No. 64-4 at 17).  Dr. Virk has been the Chief Medical Executive of CCHS at VSP since August 8, 2016.  (Doc. No. 64-4 at 66).

- Prior to his incarceration, Plaintiff was involved in two work accidents: the first occurred in 1988 when Plaintiff was crushed against a wall by fallen steel injuring his lower back, and the second occurred in 1994 when Plaintiff suffered an injury to his neck.  (Doc. No. 72-2 ¶3).

- On January 27, 2011, Dr. Singh, who is not named as a defendant in this case, examined Plaintiff.  Afterwards, Dr. Singh concluded in his medical opinion that Plaintiff did not need morphine based on his exam of Plaintiff, review of Plaintiff's medical history and health records, and Dr. Singh's review of a November 2010 surveillance video showing Plaintiff "carried heavy punching bag approx 100 yards, lifted bag for another I/M to hook onto higher bar, and [plaintiff] then proceeded to punch bag w/ heavy punches." (Doc. No. 53-2 at 119-121).  Dr. Singh discontinued Plaintiff's gabapentin prescription and offered Plaintiff Tylenol for pain, but Plaintiff refused it.  (*Id*. at 121).  Although Plaintiff disputes that he is the person in the video, Plaintiff does not dispute that Dr. Singh

9

opined that he did not require morphine after his 2011 exam and review of
Plaintiff's medical records.  Further, whether Plaintiff is the person in the 2010
video is not a material fact in deciding the current motion.

- On June 16, 2011, Dr. Gill, who is not named as a defendant in this action, saw
Plaintiff after Plaintiff filed a grievance regarding Plaintiff's request to continue
his pain medications.  (*Id*. at 118).  Plaintiff complained of right cervical and
lumbar pain as well as pain traveling down his right leg and right arm.  (*Id*.).  Dr.
Gill noted that Plaintiff had no clubbing, no cyanosis, no edema, no analgesic gait,
no limp, had good grip and was able to get "comfortably up on the examination
table without any help."  (*Id*.).  Despite having some superficial tenderness and not
having Plaintiff's radiological reports, Dr. Gill concluded that Plaintiff's physical
examination was inconsistent with acute cervical or lumbar pain and continued
Plaintiff on ibuprofen and Tylenol.  (*Id*.).  Plaintiff disagrees with Dr. Gill's
medical findings.  The findings as stated are memorialized in Plaintiff's certified
medical record.  Further, as discussed below, these issues are not material disputed
facts as to whether Defendants acted with deliberate indifference when they
removed Plaintiff from his opioid medication in 2019.

- On July 21, 2011, Dr. Gill saw Plaintiff and Plaintiff asked for an Olson review.[5]
Dr. Gill wrote a letter to Medical Records for an Olson review.  Plaintiff
complained of neck pain and Dr. Gill noted Plaintiff was on anti-inflammatories
and analgesic medication and refilled his medications.  Dr. Gill referred Plaintiff to
the Pain Committee but at the time found "no indication to start [Plaintiff] on
morphine." (Doc. No. 53-2 at 116).

- On June 20, 2012, Dr. Ulit, who is not named as a defendant in this action,
renewed Plaintiff's morphine prescription for 15 milligrams twice a day.  (*Id*. at
109; Doc. No. 72-1 ¶7).

---

[5] During an Olson review, an inmate's counselor allows him to see the information contained inside his file, except for confidential section, under California Codie of Regulations, Title 15, 3370(c).

10

- Plaintiff's morphine prescription was raised on December 13, 2014 to 30 milligrams twice a day by Dr. Anderson, who is not named as a defendant in this action.  (Doc. No. 72-1 ¶8).

- On March 18, 2016, the CDC published guidelines for prescribing opioids for chronic pain.  (Doc. No. 53-2 at 201-252).

- On October 11, 2018, J. Clark Kelso, the Receiver of CDCR's medical services under the *Plata v Schwarzenegger* settlement agreement, issued a memorandum directing CCHCS to implement a comprehensive substance use disorder treatment program noting "CCHCS recognized that patients were being prescribed opioids for pain relief in circumstances where other treatment options not involving opioids had become available" and "issued new guidelines for pain management to reduce reliance on opioids."  (Doc. No. 72-1, ¶14).

- The State of California's 2019-2020 policy regarding opioids reflects the nationwide opiate crisis and internal studies of drug abuse at CDCR facilities. (Doc. No. 53-2, ¶15).

- The United States Department of Health and Human Services, Center for Disease Control and Prevention promulgated guidelines, which also strongly warn against the use of opiates in the treatment of chronic non-cancer pain.[6] (*Id*., ¶13).  The *Imai* study[7] and CDC guidelines were used in establishing the 2019-2020 California Correctional Health Care Services ("CCHCS") Care Guide, which reflects the strong disfavor of opiates in the treatment of chronic pain unrelated to cancer within California's prisons.  (*Id*.).

- To maintain patient safety and to promote safe prescribing practices, the chart of

---

[6] *See* www.cdc.gov/drugoverdose/prescribing/guideline.html.

[7] Dr. Kent Imai's study entitled "*Analysis of 2016 Inmate Death Reviews in the California Correctional Healthcare System*" (Oct. 8, 2017) documents the death rate from drug overdoses showing an increase over the previous decade, and the death rate from drug overdoses in California's prisons as three times higher than in all U.S. state prisons.  https://cchcs.ca.gov/wp-content/uploads/sites/60/2017/11/2016- Inmate-Death-Reviews.pdf, pp. 31–32.

every patient receiving chronic opioid therapy was systematically reviewed by a Pain Management Committee. (Doc. Nos. 53-2 at 5, 168-190; 64 at 28; Doc. No. 72-1 ¶17).

- CCHS Care Guide for Pain Management instructs that in "select patients, opioids may be considered in combination with non-pharmacologic treatments and non-opioid medication. The CCHS Pain management guidelines also state the opioids are not the preferred treatment for chronic pain." (Doc. No. 64-4 at 72; 53-2 at 168).

- On November 12, 2018, Plaintiff underwent surgery for the removal of a tumor from his stomach. (*Id*. at 16-17; Doc No. 72-1 ¶18).

- The discharge instructions from Plaintiff's November 12, 2018 surgery directed that Plaintiff be provided morphine for the next seven days after his surgery. (*Id*. at 107; Doc. No. 72-1 ¶18).

- On January 10, 2019 Plaintiff's morphine prescription was 30 milligrams twice daily. (Doc. No. 53-2 at 81).

- On January 10, 2019, the Pain Management Committee, which included Defendants Shwe and Longia, reviewed Plaintiff's unit health record, radiological reports, a CT scan, and MRI revealing degenerative joint disease, and found that Plaintiff had no objective evidence of severe disease requiring the use of opioid medication. (*Id*. at 104-108; Doc. No. 72-1 ¶20). While Plaintiff disagrees with Defendants' characterization of his degenerative joint disease, he does not disagree that the Pain Management Committee made such findings.

- The Pain Management Committee recommended that Plaintiff receive non-opioid medication, exercise, and that Plaintiff participate in a mental health pain management program. (Doc. No. 53-2 at 104).

- On January 22, 2019, Defendant Toor advised Plaintiff of the Pain Management Committee's decision to wean him off long-term opiates and its reasoning regarding the same and offered Plaintiff alternative medication. Plaintiff

1    ultimately decided to try Trileptal with naproxen.  (*Id*. at 80).

2    • On January 22, 20219, Plaintiff's morphine dosage was cut in half.  (*Id*.).

3    • On February 12, 2019, Defendant Toor met with Plaintiff, who complained about

4       his back pain. Defendant Toor noted that he did not see any changes in Plaintiff's

5       functional status, and there was a vast discrepancy between Plaintiff's claimed

6       pain and observed functional status as he had observed Plaintiff walk comfortably

7       in the yard a few days prior.  (*Id*. at 79; Doc. No. 72-1 ¶22).  Plaintiff disagrees

8       with Dr. Toor's observations as to his level of pain and functional status and his

9       medical opinions.

10   • Plaintiff's dosage of morphine was again cut in half on February 12, 2019, and

11      Plaintiff's non-opioid medication was continued.  (Doc. No. 53-2 at 78-79).

12   • On February 12, 2019, Defendant Toor referred Plaintiff to the mental health pain

13      management group.  (*Id*. at 79).

14   • Plaintiff was completely weaned off morphine by March 1, 2019.  (*Id*. at 77-78).

15   • On March 1, 2019, Plaintiff met with Defendant Toor and stated that he wanted

16      the stem cell therapy he saw advertised on television.  (*Id*. at 77; Doc. No. 72-1

17      ¶23).

18   • On March 13, 2019, Plaintiff met with the Interdisciplinary Treatment Team

19      (IDTT) Committee consisting of 12 individuals, including Defendants Virk, Toor

20      and Longia, "to make them aware of his pain and affects it had on his daily life,

21      and to make them legally liable for failing to treat his chronic pain." (Doc. No. 1,

22      ¶19).  Dr. Toor, as Plaintiff's Primary Care Physician, presented Plaintiff's case to

23      the IDTT Committee.  (Doc. No. 64-4 at 17, Dr. Toor Response to Interrogatory

24      No. 2).  In preparation, Dr. Toor reviewed Plaintiff's medical records related to the

25      January 10, 2019 decision by the Pain Management Committee, including: March

26      27, 2007 consultation notes, notes of an April 18, 2077 x-ray, March 2008

27      consultation note indicating Plaintiff refused surgery, October 2008 notes

28      concerning an MRI, September 1, 2011 consultation notes from the Pain

13

Committee review, May 25, 2012 medical progress notes indicating Plaintiff complained of neck pain and was referred for an x-ray, June 1, 2012 x-ray results, June 20, 2012 progress note indicating Plaintiff complaints of back and neck pain, July 19, 2012 progress notes indicating Plaintiff had neck pain in 2008 but refused an operation and request for MRI placed, July 30, 2012 MRI, September 20, 2012 medical progress note indicating MRI conducted and Plaintiff was referred to neurosurgery, October 3, 2012 progress note indicating neurological exam was unremarkable and Plaintiff refused surgery, November 2018 note regarding endoscopic gastrointestinal procedure, and August 22, 208 note of CT exam. (*Id.* at 18, Dr. Toor Response to Interrogatory No. 3). The IDTT Committee "unanimously decided that Plaintiff was better served without opiates." (*Id.*, Dr. Toor response to Interrogatory No. 4).

- On April 25, 2019, Plaintiff requested Cymbalta for his chronic pain and Defendant Toor agreed to start him on the requested medication. (Doc. No. 53-2 at 75; Doc, No, 72-1 ¶24).

- On May 31, 2019, Plaintiff discontinued Cymbalta. (*Id.* at 91; Doc. No. 72-1 ¶24). Plaintiff states he discontinued Cymbalta due to its side-effects.

- On June 26, 2019, Plaintiff met with Defendant Toor and requested steroid shot for his shoulder and back. Defendant Toor agreed to consider the steroid shot if Plaintiff's oncologist agree. At the visit, Defendant Toor did not observe Plaintiff "exhibit any signs of significant pain issues." (Doc. No. 53-2 at 75).

- On September 9, 2019, Defendant Toor conducted a physical examination of Plaintiff and found no deformity to Plaintiff's back or neck, no paraspinal stiffness, good range of motion, good motor strength, and no sensory deficits. (*Id.* at 71-72). During his examination, Defendant Toor noted that Plaintiff's nonspecific pain issues were disproportionate to his observed activity and that Plaintiff was unwilling to try any other formulary medications. (*Id.* at 72).

- On September 19, 2019, with Plaintiff's consent, Defendant Toor ordered a

14

procedure clinic visit for a trigger point injection for Plaintiff but found no indication for Plaintiff to be prescribed opiates; however, Defendant Toor continued Plaintiff's medications and recommended he continue taking his medications and exercise.  (*Id*.).

- On October 9, 2019, Plaintiff had an x-ray of his cervical spine, which showed severe degenerative changes at C5-6 and C6-7.  (Doc. No. 64-4 at 129).

- On November 6, 2019, Defendant Toor saw Plaintiff who reported that he had a dull achy pain that radiated to his upper extremity, numbness, and paresthesia in the right upper arm region on the lateral side; however, Defendant Toor observed that Plaintiff was able to lift his position using his right arm with no issues.  (Doc. No. 53-2 at 68).

- On November 6, 2019, Defendant Toor discussed with and Plaintiff the results of his x-rays showing severe degenerative disc disease.  (*Id*.).  During this November 6, 2019 meeting, Plaintiff requested a follow-up with a neurosurgeon to consider a surgical option and Defendant Toor submitted a request.  (*Id*. at 68-69).

- On December 12, 2019, Plaintiff had a medical appointment with neurosurgeon Dr. Rahimifar.  (Doc. No. 64-4 at 131).

- Plaintiff was provided access to a transcutaneous electrical nerve stimulation unit for the treatment of his pain.  (Doc. No. 53-2 at 46-47).

**B.  Plaintiff's Request for Judicial Notice**

Plaintiff accompanied his opposition with a request for judicial notice.  (Doc. No. 63).  In his request, which comprises 477 pages including exhibits, Plaintiff asks the Court to accept certain "adjudicative facts."  (Doc. No. 63 at 1).  Plaintiff then lists 14 different facts[8] that he claims are supported by the exhibits attached to his request.  (*Id*. at 2-5, citing Exhibits 1-14).  Defendants' response to and/or opposition to Plaintiff's request was incorporated in their reply in support of their motion for summary Judgment.  (Doc. No. 72 at 3-5).

---

[8] Plaintiff numerically lists the "adjudicative facts" as (1) through (14).  (Doc. No. 63 at 1-2).  Plaintiff further elaborates upon each numbered adjudicative fact at paragraph 2, subparagraphs (a) through (n).  (Id. at 3-5).  The Court considers each numbered fact and explanatory paragraph, and where appropriate, addresses them together.

Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take judicial notice on its own or at the request of any party. Fed. R. Evid. 201(c). The Court considers each request below.

### 1. Requests Nos. 1(a) and 2(b)

Plaintiff requests the Court to take judicial notice: (1) that he filed a Freedom of Information Act ("FOIA") Request with the Centers for Disease Control and Prevention ("CDC") on May 26, 2019, requesting information about a letter from Dr. Sally Satel to the CDC concerning treatment of chronic pain with opioids; and (2) that "in response to Dr. Satal's [sic] open letter, CDC Director, Dr. Robert Redfield, responded by stating the CDC Guideline for prescribing opioids for chronic pain (2016) does not endorse mandated or abrupt dose reduction or discontinuation." (Doc. No. 63 at 1). As exhibits, Plaintiff attaches undated correspondence between himself and Roger Andoh, CDC FOIA Officer, concerning Plaintiff's May 25, 2019 FOIA request and Mr. Andoh's letter dated June 7, 2019. Plaintiff does not submit a copy of his May 25, 2019 FOIA request. (See *Id*. at 10-13, Exhibit 1). Notably, the correspondence from Mr. Andoh, however, references Plaintiff's May 25, 2019 FOIA request, not a May 26, 2019 FOIA request. (*Id.* at 13, 15). Plaintiff also submits a copy of Mr. Andoh's letter dated July 15, 2019, attaching Dr. Robert Redfield's April 10, 2019 letter to Dr. Satel and an April 14, 2019 article form the Wall Street Journal by Dr. Satel. (*Id*. at 17-18). Dr. Redfield identifies himself in the correspondence as the Director of the CDC.

A Court may take judicial notice of official correspondence from a public agency. *Hein v. Captain Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1259 n.4 (9th Cir. 2000). "A court may take judicial notice of the existence of matters of public record . . .but not the truth of the facts cited therein." *Marsh v. San Diego County*, 432 F.Supp.2d 1035, 1043 (S.D. Cal. May 5, 2006) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689-690 (9th Circ. 2001) (other citation omitted). **"[P]**ublic records are subject to judicial notice only to prove their existence and

16

1  content, but not for the truth of the matters asserted therein." *Mililani Group, Inc. v. O'Reilly*

2  *Automotive, Inc.*, 2012 WL 5932980, at *1 (E.D. Cal. Nov. 27, 2012).

3  The undersigned grants Plaintiff's requests judicial notice to the extent the June 7, 2019

4  and July 15, 2019 letters from Roger Andoh and April 10, 2019 letter from Dr. Redfield

5  constitutes official correspondence.  Further, the undersigned takes judicial notice of the contents

6  of the letter, specifically, the statement in Dr. Redfield's letter dated April 10, 2019, that states the

7  CDC's "Guideline does not endorse mandated or abrupt does reduction or discontinuation, as

8  these actions can result in patient harm."  (Doc. No. 61 at 17).  As a side note, but significant,

9  there are no allegations in the operative pleading that Plaintiff's use of morphine was abruptly

10  stopped or discontinued.  Thus, the Court does not find this fact material for purposes of the

11  instant motion.

12  2.   Request Nos. 3(c) and 6(f)

13  Plaintiff requests the Court take judicial notice that as evidenced by a memorandum

14  authored by J. Clark Kelso and dated October 11, 2018, CDCR did not direct the removal of the

15  over-prescription of opioids in its institutions but instead directed CDCR to implement a

16  substance abuse program.  (Doc. No. 63 at 2-3).  A copy of Kelso's October 11, 2018

17  Memorandum is attached as Exhibit 3.[9]  Plaintiff also requests the Court to take judicial notice

18  that CCHCS' Pain Management Guidelines, Part-2 states that  "Oxarbazepine may be used as an

19  alternative to carbamazepine for trigeminal neuralgia, however, it has no u[t]ility in any other

20  neuropathic pain condition and should not be used for pain management in general."  (Doc. No.

21  63 at 2, 4).  In support of his request, Plaintiff submits CCHCS' Pain Management Guidelines,

22  Part-2-Therapy-Non-Opioid as Exhibit 6.  (Doc. No. 63-1 at 21-51).

23  Regarding the October 11, 2018 Kelso Memorandum, Defendants correctly acknowledge

24  that "[p]ublic records downloaded from a public agency's official website . . . are subject to

25  judicial notice[;]" but argue Plaintiff is requesting the court to make a disputed inference from

26

27  ───────────────
[9] Plaintiff attached Kelso's memorandum as Exhibit 3 to his request, but the pages of are out of order.
28  (*See* Doc. No. 63-2 at 100-124).  Because the memorandum is a public record, the Court accessed it from
the CCHCS website at https://cchcs.ca.gov/reports.

1  information, which is improper. (Doc. No. 72 at 4). As discussed *supra*, a Court may take notice

2  of public records, however, it may not make disputed factual inferences from judicially noticeable

3  facts. *In re Mora*, 199 F.3d 1024, 1026 n.3 (9th Cir. 1999). Defendants' objections to the Kelso

4  Memorandum are not entirely clear. The Court grants judicial notice as to the existence and

5  contents of the October 11, 2018 Memorandum by J. Clark Kelso. Specifically, as stated in his

6  October 11, 2018, Memorandum, J. Clark, Receiver, directed CDCR staff "to plan for the

7  implementation of a comprehensive substance use disorder treatment program . . . to reduce the

8  substantial number of patients within CDCR who have substance and/or opioid use disorders

9  (OUD)." The Court declines to infer any other facts as to the scope of such program.   Similarly,

10  the Court takes judicial notice that CCHCS' Pain Management Guidelines sets forth at Step 3 a

11  "summary" of "non-opioid pharmacological therapy" including oxcarbazepine and the summary

12  states as Plaintiff quotes. (Doc. No. 63-3 at 30).   The Court, however, infers no other facts from

13  the quoted passage.

14                    3.   Requests Nos. 4(d)-5(e)

15       Plaintiff requests the Court to take judicial notice that "[t]hat anger and insomnia are

16  symptoms of chronic pain" and "[t]hat Plaintiff has never been diagnosed as bipolar." (Doc. No.

17  63 at 2-4). In support, Plaintiff attaches excerpts of his mental health records, patient education

18  material, and his disciplinary records. (Doc. No. 63-2 at 1-86; 63-3 at 1-20). These requests

19  require the Court to make medical conclusions from a review of excerpts of Plaintiff's

20  disciplinary records and mental health records. Furthermore, there is no affidavit from the

21  applicable custodians of records for Plaintiff's purported mental health records and disciplinary

22  records he submits. The Court denies Plaintiff's request for judicial notice because Plaintiff's

23  purported mental health records, patient education material, and his disciplinary records, are not

24  certified and are not matters of public record. *Walker v. Woodford*, 454 F.Supp.2d 1007, 1022

25  (S.D. Cal. 2006); *Nails v. Haid*, 2016 WL 4180973, at *2 n.2 (C.D. Cal. Apr. 6, 2016).

26       Notably, while Defendants argue in their brief that Plaintiff "has psychiatric instability

27  (diagnosed bi-polar)," (Doc. No. 53-1 ay 7:22-23), Defendants do not proffer such a diagnosis in

28  their statement of undisputed facts, nor was the Court able to locate in Defendants' exhibits in

support of their statement of material facts such a medical finding.  (See Doc. No. 53-2, ¶¶ 11-16).  Thus, whether Plaintiff does or does not have a diagnosis of bi-polar is not a material fact, disputed or otherwise.  Moreover, even if Plaintiff had submitted admissible medical literature to support the purported fact that anger and insomnia are symptoms of chronic pain, the relevant question here is whether Plaintiff experienced such symptoms, and whether such symptoms constituted a serious medical condition for which Defendants were deliberately indifferent.

4.   Plaintiff's Requests Nos. 7(g), 8(h), 9(i), 10(j), 11(k), 12(l), 13(m), 14(n)

Plaintiff requests that the Court take judicial notice of different medically related facts extracted from various medical resources.  (Doc. No. 63 at 2-5).  Specifically, Plaintiff asks the Court to find as facts: (7) the drugs Oxcarbazepine and Gleevec at times can cause a drug interaction; (8) duloxetine (Cymbalta) and pregabalin (Lyrica) has received FDA indication for diabetic peripheral neuropathic pain but not cervical radiculopathy pain; (9)  cervical radiculopathy is a syndrome of pain and/or sensorimotor 0deficient due to cervical nerve root compression; (10) cervical spondylosis results from chronic disk degeneration; (11) Naproxen is used to relieve mild pain; (12) Morphine is used to relieve moderate to severe pain; (13) Opioids may be needed in cases of serve neck pain; and (14) spinal fusion surgery is a major surgery. (*Id*).  Plaintiff attaches excerpts from various medical and/or scientific sources, including the Physician Desk Reference, Method of "Pain" by Steven A. House, MD, abstract from HHS Journal, excerpts from the National Institute of Health for Naproxen and Morphine, and excerpts from the Mayo Clinic regarding neck pain and spinal fusion.  (Doc. No. 63-3 at 53-151, Exhibits, 7-14).

Defendants oppose Plaintiff's request for judicial notice because Plaintiff is using these facts in his opposition to their motion for summary judgment and Plaintiff has not met the procedural requirements of Rule 56 of the Federal Rules of Civil Procedure, which requires a proper foundation be laid before evidence can be considered on summary judgment.  (Doc. No. 72 at 5).  Defendants also argue that because Plaintiff is seeking to offer the statements for the truth of the matter asserted, they are inadmissible hearsay and should be denied.  (*Id.*).

Certain of the adjudicative facts come from verifiable government websites or medical

treatises.  A court may "take judicial notice of statistics and medical information from official government websites." *Smith v. Fricke*, 635 F. Supp. 3d 152, 164 (N.D. N.Y. 2022) (taking judicial notice of risk factors for prostate cancer as listed on CDC website).  After reviewing each of the medical resources, the Court takes judicial notice that certain requests can be deemed adjudicative facts.  However, the relevant question before this Court remains:  whether Plaintiff suffered from a serious medical condition at the time when the Committee decided to wean Plaintiff off opioids and whether Defendants were deliberately indifferent to Plaintiff's serious medical condition, i.e., continued complaints of chronic pain.  Thus, the Court declines to grant Plaintiff's request numbers 7-14 because the Court finds they are not material to the issues pending before the Court.

## IV.  ANALYSIS

### A.  Serious Medical Need

Plaintiff reports suffering from chronic pain stemming from injuries he sustained to his lower back and neck prior to his incarceration.  Further, Plaintiff's CT scan, MRI, and x-rays revealed he suffered from degenerative joint disease.  The parties do not dispute, and the undersigned finds based upon the evidence presented by the parties, that a reasonable juror could find that Plaintiff's chronic pain and degenerative joint disease, for which he was previously prescribed morphine, constituted a serious medical need.  *McGuckin*, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

### B.  Deliberate Indifference

#### 1.  Allegations of Falsification of Medical Records

Before turning the deliberate indifference prong, the undersigned addresses Plaintiff's allegations that Dr. Gill made false statements in Plaintiff's medical records, that the 2010 surveillance does not depict him, that the 2011 Pain Committee Review was a sham, and Defendant Toor and previous medical providers falsified his medical records.  (Doc. No. 64 ¶¶39-

43, 46-53, 55-56, 60, 8255).  First, even if the accuracy of the 2010 surveillance video or medical records are in dispute, such disputes are not material.  It is undisputed that none of the Defendants knew that the medical records or the 2010 surveillance video were allegedly false when they saw reviewed Plaintiff's medical file.  On summary judgment, a court must evaluate the state of minds of the Defendants when they made or recommended the decision to discontinue Plaintiff's morphine or opioid medications.  Statements in prior medical records are relevant in determining deliberate indifference only to the extent that such records constitute information on which the Defendants relied.  If a Defendant relied on information from Plaintiff's past medical providers, the inaccuracy of such records, even if proven, is not probative of deliberate indifference.  Each Defendant was required to review and consider all of Plaintiff's medical records in rendering their own medical findings and recommending a treatment decision.  Reliance on inaccurate medical records in making such medical findings would only support a finding of deliberate indifference if a particular Defendant was subjectively aware of the record's inaccuracy, and then deliberately disregarded whether his decision to remove Plaintiff from opioid medications created a substantial risk to Plaintiff.

To the extent Plaintiff attempts to create genuine issues of material fact by claiming that Dr. Toor or any of his former medical providers falsified Plaintiff's medical records, Plaintiff must present competent evidence to substantiate each allegation.  Conclusory and speculative allegations, without any evidentiary support, are insufficient to raise a genuine issue of fact. *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (as amended) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").  Plaintiff must present competent admissible evidence demonstrating that the doctors' progress notes are false in material respects as related to the elements of his Eighth Amendment claims.  Plaintiff, however, does not offer any evidence to support his claims that his medical records were falsified or that Defendant Toor submitted an incomplete package.  Plaintiff's unsupported and conclusory argument does not create a material issue of fact and is insufficient to defeat summary judgment.  *See Soremekun*, 509 F.3d at 984; *Arpin*, 261 F.3d at 922; *see also* Fed. R. Civ. P. 56(c)(2).  Additionally, the

1    Court is not required to accept Plaintiff's self-serving statements where they are contradicted by

2    the doctor's medical records, as well as the medical records of other medical staff and specialists,

3    and test results. *See Toscano v. Embree*, 2007 WL 2753366, at *5 (N.D. Cal. Sept. 19, 2007)

4    (noting a plaintiff cannot create a triable issue of fact by simply misrepresenting the contents of a

5    document).

6         Dr. Toor recorded in his February 12, 2019 medical note that "There is a vast discrepancy

7    between [Plaintiff's] claimed pain and his observed functional status. Also[,] to be noted that I

8    saw the patient a few days back out in the yard walking around comfortably, no equipment

9    usage." (Doc. No. 53-2 ¶22). In his declaration, Plaintiff claims that Dr. Toor lied that he

10   observed Plaintiff walking around the yard comfortably. (Doc. No. 64 ¶107). Plaintiff submits

11   an affidavit from inmate David Mahler and inmate Cesar Herrera to refute Dr. Toor's statement.

12   (Doc. No. No. 64-4 at 13, 14). Upon review, neither of the inmate's declaration dispute Dr.

13   Toor's statement concerning the observations made on or about February 12, 2019. Inmate

14   Mahler states he has only known Plaintiff "since 2020," which is after the date of the observed

15   event. (Doc. No. 64-4 at 13). So, Mahler cannot testify to what Plaintiff's condition was in

16   February 2019. And, although inmate Herrera states he has witnessed Plaintiff "in pain many

17   times" "over the years," "on occasion, over the last seven years," and has seen "pain in

18   [Plaintiff's] face when he needed to get up from the ground after an alarm," none of these

19   statements refutes Dr. Toor's noted observation in mid-February 2019.

20        Plaintiff offers no evidence to support his claims that his medical records were falsified or

21   that Defendant Toor submitted an incomplete package. Plaintiff's unsupported and conclusory

22   argument does not create a material issue of fact and is insufficient to defeat summary judgment.

23   *See Soremekun*, 509 F.3d at 984; *Arpin*, 261 F.3d at 922; *see also* Fed. R. Civ. P. 56(c)(2).

24             2.  Difference of Medical Opinion

25        Defendants submit that Plaintiff cannot show a genuine dispute of material fact as to the

26   second prong of medical deliberate indifference—whether Defendants failed to respond to his

27   serious medical condition. *Jett*, 439 F.3d at 1096. A defendant "cannot be said to have been

28   indifferent" to an inmate's pain if they took steps to address it." *DeGeorge v. Mindoro*, No. 17-

1   CV-06069-LHK, 2019 WL 2123590, at *7 (N.D. Cal. May 15, 2019).  The Court agrees.

2          Construing the evidence in the light most favorable to Plaintiff, the undersigned finds

3   there is no triable issue as to whether any of the Defendants acted with deliberate indifference to

4   Plaintiff's serious medical conditions.  Instead, the record evidence reveals only that Plaintiff

5   disagrees with Defendants' decision to wean him off opioids and substitute other treatment

6   modalities.  "Typically, a difference of opinion between a physician and the prisoner — or

7   between medical professionals — concerning what medical care is appropriate does not amount

8   to deliberate indifference."  *Edmo v. Corizon, Inc*., 935 F.3d 757, 786 (9th Cir. 2019) (citations,

9   quotations and brackets omitted).  "But that is true only if the dueling opinions are medically

10  acceptable under the circumstances."  *Id*. (citation omitted).  To determine whether the treatment

11  was medically acceptable, courts must consider "the record, the judgments of prison medical

12  officials, and the views of prudent professionals in the field...."  *Id*.  "Accepted standards of care

13  and practice within the medical community are highly relevant in determining what care is

14  medically acceptable and unacceptable."  *Id*.

15         The undisputed facts as supported by the record demonstrate that Defendants as part of

16  VSP's pain management committee reviewed Plaintiff's concluded that Plaintiff's current

17  medical condition did not require treatment with opioids and consistent with CDCR's pain

18  management polices set forth in the 2019 CCHS Care Guide, determined that Plaintiff should be

19  weaned off opioids and treated with alternative pain management tools.  The undisputed facts

20  show that prior to making the decision to wean Plaintiff off opioids, the pain management

21  committee reviewed Plaintiff's unit health record, radiological reports, and a CT scan and MRI

22  revealing degenerative joint disease.  This evidence demonstrates a legitimate penological interest

23  in discontinuing Plaintiff's prescription for morphine based on current medical best practices,

24  including those in implemented at CDCR facilities, which disfavored the use of opioids for

25  chronic non-cancer pain.  Instead of prescribing opioids, the pain management committee

26  recommended Plaintiff receive non-opioid medication, exercise, and participate in a mental health

27  pain management program to address his chronic pain.

28         It is undisputed that after the pain management committee recommendation that Plaintiff

receive non-opioid medication, Defendant Toor continued Plaintiff's non-opioid medication and referred him to the mental health pain management group.  On April 25, 2019, Defendant Toor agreed to start Plaintiff on Cymbalta, which Plaintiff refused about a month later due to its side-effects.  Defendant Toor also continued to conduct physical examinations of Plaintiff, ordered trigger point injections, discussed x-ray results with Plaintiff, and submitted a request for Plaintiff to have an appointment with a neurosurgeon.  Finally, Plaintiff had access to a transcutaneous electrical nerve stimulation unit for the treatment of his pain.  Plaintiff does not dispute that he was offered different non-opiate treatments for his pain.

Finally, Plaintiff argues that Defendants are not entitled to summary judgment because the course of action chosen by Defendants was "medically unacceptable under the circumstances" and chosen "in a conscious disregard of an excessive risk" to his health.  *Hamby*, 821 F.3d at 1092.  (*See generally* Doc. No. 64).  To support his argument, Plaintiff cherry picks quotes from different medical resources without providing the full quote or its context.  (*Id.* at 6-7, 49 ¶¶98-99).  Contrary to Plaintiff's assertion, Defendants' course of treatment was medically acceptable and not chosen in a conscious disregard of an excessive risk to Plaintiff's health.  *Supra*, Defendants' decision tracks the guidance from CCHS, CDCR, and the CDC.  Following this guidance and reviewing Plaintiff's medical records before making their decision, reflects Defendants' decision to wean Plaintiff off opioids was not made haphazard or without regard to Plaintiff's health but instead was consistent with medically acceptable practices.

In summary, while the undisputed evidence reveals Plaintiff had a serious medical need, the undisputed material evidence shows that the nature of Defendants' response was not one of deliberate indifference to Plaintiff's serious medical needs.  There are no allegations, yet alone any evidence, to suggest that Defendants immediately discontinued Plaintiff's morphine prescription.  Instead, Defendants first weaned Plaintiff of the morphine while offering Plaintiff various non-opiate treatments for his pain.  Defendants did not fail to respond to Plaintiff's complaints of chronic pain, and their decision to wean Plaintiff off opioids was medically acceptable under the circumstances and not in a conscious disregard of an excessive risk to Plaintiff's health.  To the contrary, Defendants consistently responded to Plaintiff's reports of

24

1   pain, offering him different alternatives to opioids.

2       Based on the foregoing, Defendants have established that they were not deliberately

3 indifferent to Plaintiff's serious medical need, and Plaintiff has failed to raise a genuine issue for

4 trial that Defendants' chosen course of treatment to wean Plaintiff off opioids and substitute

5 alternative medical treatment to treat his serious medical condition was medically unacceptable

6 under the circumstances and chosen in disregard of an excessive risk to Plaintiff's health. *See,*

7 *e.g.*, *See Hutchins Jr. v. Johal*, 2021 WL 4690597 (E.D. Cal. Oct. 7, 2021) (granting defendant's

8 motion for summary judgment finding defendant was not deliberately indifferent to plaintiff's

9 serious medical needs when defendant tapered and discontinued plaintiff's morphine prescription)

10 *findings and recommendation adopted by* 2021 WL 6051696 (E.D. Cal. Jan. 10, 2022);

11 *DeGeorge v. Mindoro*, 2019 WL 2123590 (N.D. Cal. May 15, 2019) (granting defendants'

12 motion for summary judgment and finding no deliberate indifference to plaintiff's serious

13 medical needs when defendants weaned plaintiff off morphine and "took other reasonable steps to

14 abate plaintiff's pain"); *Wilkins v. Barber*, 2023 WL 1111657, at *18 (E.D. Cal. Jan. 30, 2023),

15 *report and recommendation adopted,* 2023 WL 2617017 (E.D. Cal. Mar. 23, 2023); *Solomon v.*

16 *Negrete*, 2014 WL 546367 (E.D. Cal. Feb. 11, 2014), *findings and recommendations adopted by*

17 2014 WL 1024567 (E.D. Cal. Mar. 14, 2014) (granting motion for summary judgment on claim

18 challenging discontinuance of morphine prescription with alternate prescription for ibuprofen).

19 *See also Wyres v. Zhang*, 2021 WL 3772387 (S.D. Cal. Aug. 25, 2021); *Montiel v. Taher-Pour*,

20 2014 WL 2574533 (E.D. Cal. June 9, 2014), *findings and recommendations adopted by* 2014 WL

21 3615801 (E.D. Cal. July 22, 2014) (granting defendants summary judgment on Eighth

22 Amendment claim challenging abrupt discontinuation of tramadol and four-day taper of

23 gabapentin, with the use of an alternative prescription for ibuprofen).  For all the above reasons,

24 Plaintiff fails to demonstrate a genuine dispute of material fact exists that the discontinuation of

25 the morphine prescription violated the Eighth Amendment.  Thus, Defendants are entitled to

26 summary judgment.

27     **C. Qualified Immunity**

28       In the alternative, Defendants assert they are entitled to qualified immunity because there

1    is not clearly established case law that provided Defendants with any warning that their decision

2    to discontinue Plaintiff's opioid medication violated Plaintiff's constitutional rights.  (Doc. No.

3    53-1 at 10).  Qualified immunity involves a two-part inquiry: first, "whether the facts that a

4    plaintiff has alleged ... or shown ... make out a violation of a constitutional right," and second,

5    "whether the right at issue was 'clearly established' at the time of defendant's alleged

6    misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S.

7    194 (2001)).

8            Because the undersigned has determined that there was no constitutional violation, the

9    district court need not analyze the parties' arguments regarding qualified immunity.  *Saucier*, *Id.*

10   at 201 ("If no constitutional right would have been violated were the allegations established, there

11   is no necessity for further inquiries concerning qualified immunity.").  Nonetheless, review of

12   caselaw supports Defendants' arguments that because they followed CCHCS criteria for

13   identifying and discontinuing Plaintiff's opioid medication, they arguably are entitled to qualified

14   immunity.  *See Hines v. Youseff,* 914 F.3d 1218, 1228 (9th Cir. 2019) (medical personnel who

15   simply followed the criteria developed by others are entitled to qualified immunity and cannot be

16   liable under § 1983 for any violation of a prisoner's Eighth Amendment rights). *See also Edrosa*

17   *v. Chau*, 2020 WL 5500217, at *4 (S.D. Cal. Sept. 11, 2020).

18           Accordingly, it is **ORDERED**:

19           Plaintiff's request for judicial notice (Doc. No. 63) is granted in part as set forth herein.

20           It is further **RECOMMENDED** that the district court GRANT Defendants' motion for

21   summary judgment (Doc. No. 53), enter judgment in Defendants' favor, and close this case.

22           ////

23           ////

24                                    **NOTICE TO PARTIES**

25           These findings and recommendations will be submitted to the United States district judge

26   assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

27   days after being served with these findings and recommendations, a party may file written

28   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    January 2, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

27